IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-253-FL

| | |
|---|---|
| MICHAEL RANSOME, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, -28] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Michael Ransome ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied and Defendant's Motion for Judgment on the Pleadings be granted, upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on October 28, 2009, alleging disability beginning June 1, 2006. (R. 14, 91-92). Both claims were denied initially and upon reconsideration. (R. 14, 91-94). A hearing before the Administrative Law Judge ("ALJ") was held on June 8, 2011, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 29-56). On September 2, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-24). On August 1, 2012, the Appeals Council denied Claimant's request for review. (R. 5-9). Claimant then filed a complaint in this court, after receiving an extension of time within which to do so (R. 1-2), seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ erred by not considering Claimant's mental limitations, including a reading disorder in the RFC; (2) the ALJ erred in finding that Claimant was capable of performing the jobs of document preparer and addresser; and (3) the ALJ improperly

3

evaluated Claimant's impairments under Listing 12.05C. Pl.'s Mem. [DE-25] at 8-11.

## IV. FACTUAL HISTORY

### A.     ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 16-24). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: hypertension with end organ damage; obesity; congestive heart failure; probable sleep apnea; borderline intellectual functioning and reading deficits. (R. 17). The ALJ also found Claimant had a nonsevere impairment of depression. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in his activities of daily living and social functioning, moderate limitations in concentration, persistence and pace, and no episodes of decompensation. *Id.* At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with additional limitations (i.e., only occasionally climbing ramps and stairs, and never climbing ropes, ladders or scaffolds; using foot pedals on an occasional basis;

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

only occasional stooping and crouching; sitting 6 hours in an 8 hour workday with a need to be able to vary position from sitting or standing at 30-45 minute intervals; and avoiding concentrated exposure to hazards, and pulmonary irritants such as dust, fumes, gases and poor ventilation, as well as heat). (R. 19). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 19-21).

At step four, the ALJ concluded that Claimant could not perform the requirements of his past relevant work. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that, absent substance use, Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ determined Claimant has not been disabled at any time from the alleged onset date through the date of decision. (R. 24).

**B.      Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 27 years old, unmarried and lived with his father. (R. 33-34, 45). Claimant does not have insurance or medicaid and has had problems affording medical treatment, and his father helps him pay for medical care when he can. (R. 50). Claimant was in special classes in school and received help with reading. (R. 44). He finished the eighth grade and enrolled in community college GED classes, but did not complete the program. (R. 35, 37). While attending GED classes, Claimant participated in a workforce program at the community college and was employed as a dishwasher at a hospital for four or five months, but was not hired on permanently. (R. 37). Claimant also worked full time at a diaper service for four to six months folding sheets, towels and pads, but started having problems with his breathing and legs when standing for a long period of time and was laid off. (R. 35-36). He also worked

through a temporary placement service for two days cleaning machines at a restaurant. (R. 36).

Claimant feels he cannot work because he has problems standing and sitting for a long period, pain and swelling in his left leg, difficulty breathing, and cannot lift heavy objects. (R. 49). Claimant has congestive heart failure and on some days experiences chest pain once or twice a day for 30 minutes to an hour, for which he takes Bayer aspirin and a fluid pill. (R. 39-40). He has had breathing problems his whole life due to his heart condition, which is exacerbated by his weight and has worsened over time. (R. 49). Claimant also has sleep problems and may have sleep apnea. (R. 49-50). He elevates his head at night to keep from choking, which helps at times, and has never used a CPAP machine. (R. 50). Claimant also has high blood pressure, which is controlled by two medications. (R. 41-42). Claimant had surgery on his left leg, which has metal pins in it, and he experiences pain and swelling in both legs from walking, standing or sitting for long periods of time. (R. 42-43, 46). Claimant can walk for two blocks, sit 20-30 minutes, and stand for 30 minutes before experiencing swelling in his legs and having to change positions. (R. 43). Claimant also experiences chest pain from lifting heavy items such as a sofa (R. 43-44) and back pain from walking for which he takes ibuprofen (R. 46-47).

On a typical day, Claimant wakes in the morning, showers, straightens up his room, makes his bed, eats breakfast, sometimes cleans the dishes, and watches television or goes outside on the porch. (R. 44, 48-49). Claimant sits in a recliner one to two hours a day with his legs up and is most comfortable lying down. (R. 47-48). He sometimes cooks and his father does the laundry and shopping. (R. 45). Claimant knows how to drive, but never attempted to obtain a driver's license and uses friends or relatives for transportation. (R. 34-35). Sometimes he visits friends or family, but for the most part he stays at home because of leg swelling, drowsiness, or simply not feeling like

going anywhere. *Id.* Claimant likes to play video games, listen to music, and watch television and does not belong to any organizations or clubs. (R. 46).

## C. Vocational Expert's Testimony at the Administrative Hearing

Sandra M. Wells-Brown testified as a VE at the administrative hearing. (R. 51-55). After the VE's testimony regarding Claimant's past work experience (R. 52-53), the ALJ posed the following hypothetical:

> Assume the existence of an individual who is 27 years old, thus is considered to be a younger individual, has an eighth grade education, past work as described, assume further this individual has the residual functional capacity to perform light work with lifting up to 20 pounds occasionally, up to 10 pounds frequently, only occasional climbing of ramps and stairs, no climbing of ropes, ladders, scaffolds, he should avoid concentrated exposure to hazards, dust, fumes, gases, poor ventilation, occasional use of foot pedals, occasional stooping and crouching, they should avoid concentrated exposure to heat or extremes of heat. There should be a sit, stand option every 30 to 45 minutes. The work should be unskilled, simple, routine, repetitive in nature, with only routine changes in the work environment.

(R. 53). The VE testified that such an individual would not be able to perform Claimant's past relevant work. (R. 53-54). However, the VE opined that there would be jobs at the light level that would accommodate the hypothetical individual, such as flatware wrapper (DOT # 318.687-018), counter attendant (DOT # 311.477-014), and cashier (DOT # 211.462-010). (R. 54). The VE additionally testified that there would also be jobs at the sedentary level that would accommodate the hypothetical individual, such as document preparer (DOT # 249.587-018), addresser (DOT # 209.587-010), and surveillance system monitor (DOT # 379.367-010). (R. 54-55).

## V. DISCUSSION

### A. The ALJ's RFC Assessment

Claimant first contends that the ALJ erred by not considering Claimant's mental limitations,

7

including a reading disorder, in the RFC. Pl.'s Mem. at 8. The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work based upon all relevant evidence, which may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3)-(4), 416.945(a)(3)-(4); *see also* SSR 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ thoroughly summarized Claimant's medical records and testimony at the administrative hearing, as well as the medical opinions. (R. 20-22). The ALJ specifically noted the state agency's assessment of Claimant's mental functional capacity, which found Claimant capable of "simple, repetitive, routine tasks, with mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration." (R. 22, 111-26). The ALJ found this opinion consistent with the objective evidence and, thus, determined that Claimant's mental status "would not have precluded his performance of unskilled work, i.e., simple, repetitive, routine tasks . . . ." (R. 22). Moreover, the ALJ found that Claimant's borderline intellectual functioning and reading deficits were severe impairments, and at step three the ALJ discussed that although Claimant had been diagnosed with a reading disorder and his IQ indicated

8

functioning in the borderline range, Claimant also had the ability to understand and follow directions, and perform simple, repetitive, routine tasks. (R. 18, 550-54). Thus, the record demonstrates that the ALJ did, in fact, consider Claimant's mental limitations, including a reading disorder, in the RFC and, as a result, limited Claimant to unskilled work. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and rationale, and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## B. The ALJ's Determination that Claimant Can Perform the Jobs of Document Preparer and Addresser

Claimant also contends that the ALJ's failure to consider Claimant's borderline intellectual functioning and reading disorder in the RFC resulted in error at step five, specifically the ALJ's determination that Claimant can perform the jobs of document preparer and addresser. Pl.'s Mem. at 8. Contrary to Claimant's contention, the jobs of addresser and document preparer, as described in the Dictionary of Occupational Titles, do not require complex reading and writing skills. *See* Dictionary of Occupational Titles, 209.587-010, Addresser, 1991 WL 671797 (4th ed. Rev. 1991) ("Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."); Dictionary of Occupational Titles, 249.587-018, Document Preparer, Microfilming, 1991 WL 672349 (4th ed. Rev. 1991) ("Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices."). The VE testified that these jobs are "unskilled" (R. 54-55), which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

Furthermore, even assuming Claimant could not perform these jobs, the VE also testified that Claimant could perform the job of surveillance system monitor, DOT # 379.367-010, also unskilled

9

work (R. 55), which alone constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy that Claimant could perform. *See Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *13 (E.D.N.C. Mar. 23, 2011) (citing *Prunty v. Barnhart*, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden)), *mem. & recommendation adopted*, 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

Additionally, to the extent Claimant implicitly takes issue with the ALJ's hypothetical, this argument also lacks merit. The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992); *see also Mixon v. Astrue*, No. 4:06-CV-249-FL, 2008 WL 111157, at *9 (E.D.N.C. Jan. 8, 2008). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them

supported by evidence in the record.'); *Mixon*, 2008 WL 111157, at \*9; *Bryant v. Astrue*, No. 7:06-CV-151-FL, 2008 WL 2037421, at \*11 (E.D.N.C. May 12, 2008).

As explained above, the ALJ adequately considered Claimant's mental limitations, including a reading disorder, in the RFC and accordingly limited Claimant to unskilled work. The ALJ stated in the hypothetical to the VE that the work should be "unskilled, simple, routine, repetitive in nature, with only routine changes in the work environment." (R. 53); *see Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at \*5 (E.D.N.C. Nov. 14, 2008) (concluding the ALJ's hypothetical to the VE describing an individual who could perform "simple, one- to two-step tasks, performed in a low stress, thus non-production, work environment" was sufficient to reflect the limitations of claimant suffering from borderline intellectual functioning). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006). Here, the ALJ appropriately exercised "some discretion to craft [a] hypothetical question to communicate to the vocational expert what [C]laimant [could] and [could not] do." *Id.*; *see also Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) (finding a hypothetical question describing a claimant "as capable of doing simple work adequately accounts for the finding of borderline intellectual functioning"). Accordingly, the ALJ's hypothetical to the VE was sufficient.

## C.     The ALJ's Evaluation of Claimant's Impairments Under Listing 12.05C

Claimant contends that the ALJ erred in determining Claimant did not meet Listing 12.05C, specifically asserting that the ALJ ignored Claimant's verbal IQ of 70 and his performance IQ of 66, improperly considered Claimant's past employment, and erroneously found Claimant lacking in adaptive functioning deficits. Pl.'s Mem. at 9-11. Claimant bears the burden of demonstrating that

11

his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). To meet the requirements of Listing 12.05, a claimant's impairment must first satisfy the introductory diagnostic description for intellectual disability.[2] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Specifically, the claimant must demonstrate (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two. *Id.* § 12.05. Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D). *Id.* In this case, Claimant contends he satisfies the intellectual disability listing under category C, which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function. *Id.* § 12.05C.

The ALJ determined Claimant satisfied neither the introductory diagnostic criteria for intellectual disability nor the category C criteria. (R. 18-19). With respect to the former, the ALJ found no evidence that Claimant had the requisite deficits in adaptive functioning, and with respect to the later, the ALJ found Claimant's IQ testing did not meet the criteria for 12.05C. *Id.* Because both the introductory diagnostic criteria and the category C criteria must be satisfied in order for Claimant's mental impairments to meet Listing 12.05C, if the ALJ's determination in either regard is supported by substantial evidence and not contrary to law, then it must be upheld. *See Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (finding that the claimant can prevail only by establishing that the ALJ erred in his analysis of both the diagnostic criteria and the category C

---

[2] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listing of Impairments. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (effective Sept. 3, 2013) (to be codified at 40 C.F.R. pt. 404 & 416). The terms are used interchangeably herein.

criteria). Here, the ALJ's determination that Claimant failed to meet the category C criteria is dispositive and the other assignments of error need not be considered.

The ALJ analyzed the category C criteria with respect to Claimant's IQ scores as follows:

> As to the claimant's borderline intellectual functioning, he had several IQ tests, both while attending school and as a part of his disability application process. On the Wechsler Intelligence Scale for Children-III (WISC-III) given in 1994, he scored a verbal IQ of 70, a performance IQ of 66 and a full scale IQ score of 65. It was felt to be a weak estimate of his potential due to being easily distracted and his motivation. He demonstrated substantially lower than expected achievement in math, reading, and written language, and very significantly higher achievement in listening, although achievement in other academic areas was consistent with his full scale IQ ranging from poor to borderline (Exhibit 17E).
>
> A comprehensive psychological evaluation performed by Robert D. Radson, M.S. in July 2008 included a Wechsler Adult Intelligence Scale - Third Edition III (WAIS-III). He scored a verbal IQ of 73, a performance IQ of 85 and a full scale IQ score of 77, indicating his functioning on the borderline range. He was noted to be able to understand and follow directions, and perform simple, repetitive, routine tasks (Exhibit 2F).
>
> . . . .
>
> The claimant's [] IQ testing as noted above, does not meet the criteria for 12.05C. His most recent IQ testing did not fall within the parameters of 12.05 and earlier [testing] was felt to underestimate his ability.

(R. 18). The ALJ did not, as Claimant suggests, ignore Claimant's verbal IQ of 70 and performance IQ of 66. The ALJ acknowledged these scores and discounted them based on reliability concerns raised by the tester. (R. 18, 472-73). Claimant also argues that the reliability issues went only to Claimant's full scale IQ and not his verbal and performance IQ's. However, in light of the more recent contradictory scores indicating Claimant has a verbal IQ of 73 and a full scale IQ of 77 and the tester's conclusion that the IQ scores appeared accurate and Claimant was able to understand and follow instructions and perform simple repetitive tasks (R. 552-53), the ALJ did not abuse her discretion in declining to credit the earlier scores. *See Hancock*, 667 F.3d at 474 (explaining that the

13

ALJ may weigh conflicting IQ test results) (citing *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir.1987)). Accordingly, the ALJ appropriately considered Listing 12.05C and substantial evidence supports the determination that Claimant's impairments do not meet or equal this Listing.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-28] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 30th day of December 2013.

Robert B. Jones, Jr.
United States Magistrate Judge